**WILLIAM A. BREWER III (PRO HAC VICE PENDING)**
**wab@brewerattorneys.com**
**MICHAEL J. COLLINS (PRO HAC VICE PENDING)**
**mjc@brewerattorneys.com**
**DYLAN MEFFORD (STATE BAR NO. 268969)**
**dmefford@brewerattorneys.com**
**BREWER ATTORNEYS & COUNSELORS LLP**
**1717 Main Street, Suite 5900**
**Dallas, Texas 75201**
**Telephone: (214) 653-4000**
**Facsimile: (214) 653-1015**

**Attorneys for Plaintiffs**
**COLOR SWITCH LLC and**
**COLOR SWITCH PRODUCTIONS, INC.**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **COLOR SWITCH LLC and COLOR SWITCH PRODUCTIONS, INC.,**<br><br>**Plaintiffs**,<br><br>**v.**<br><br>**FORTAFY GAMES DMCC,**<br><br>**Defendant**. | **CASE NO.**<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ........................................ 1
II. PARTIES ........................................ 3
A. Plaintiffs ........................................ 3
B. Defendant ........................................ 3
III. JURISDICTION AND VENUE ........................................ 3
IV. FACTUAL BACKGROUND ........................................ 4
A. Plaintiffs And The Color Switch Phenomenon. ........................................ 4
B. The Relationship Between Color Switch And Fortafy. ........................................ 5
C. Problems in Paradise. ........................................ 7
D. The Damage Done ........................................ 8
V. CLAIMS ........................................ 10
A. Count One: Copyright (17 U.S.C. § 101 et seq.). ........................................ 10
B. Count Two: Declaratory Judgment (28 U.S.C. § 2201). ........................................ 11
C. Count Three: Breach Of Contract. ........................................ 13
D. Count Four: Conversion. ........................................ 14
VI. PRAYER ........................................ 14

Plaintiffs Color Switch LLC and Color Switch Productions, Inc. (collectively "Color Switch") file this Complaint For Declaratory Judgment And Injunctive Relief against defendant Fortafy Games DMCC ("Fortafy"), based on personal knowledge as to their own actions and on information and belief as to all other matters, as follows:

**I.**

**PRELIMINARY STATEMENT**

1. With a spark of creative genius, David Reichelt ("Reichelt") made a breakthrough that would transform not only his life but also an entire industry. Using a 'drag and drop' software application, Reichelt developed the Color Switch game (the "Game"), a mobile game that would shatter records, and sit atop the charts for 28 consecutive days. Today, Color Switch has been downloaded more than 200 million times.

2. Reichelt was not always a famous game developer. He was not always a sought-after speaker, presenting to admiring audiences of students and technology enthusiasts. And he was certainly not always living a life punctuated by million-dollar paydays. Like many who ultimately become successful in life, Reichelt first paid his dues working random jobs and living paycheck to paycheck. For Reichelt, the odd jobs failed to provide any semblance of financial security. But what they did provide was an opportunity to pursue his dreams, a series of creative passions that would finally culminate in a breakthrough that validated an unwavering urge to create.

3. For more than two years following the creation of the Game in November 2015, Color Switch and its publishers, EyeBox Games and later Fortafy, enjoyed a productive working relationship, each earning millions of dollars, and grabbing headlines with each morning's print. Although the relationship had by all accounts been a success, it was not destined to last. Because Reichelt was a relatively unknown developer, Color Switch lacked leverage in the negotiations and entered an agreement that was unequal and atypical for the market, with Fortafy receiving 80

percent of the net revenues. Accordingly, Color Switch sought to renegotiate the deal to achieve a more equitable split. When Fortafy refused, Color Switch decided that it would honor the agreement it made, but that it would terminate the agreement when it had the ability to do so. Once the agreement was terminated, Color Switch could self-publish the Game, because it had retained all its intellectual property rights. For Fortafy, Color Switch's decision to terminate the agreement was a devastating development. The Game represented everything to Fortafy, which had no other games in its portfolio and no other business outside of Color Switch. Refusing to accept Color Switch's decision, Fortafy failed to honor its legal obligations.

4. What happened next is a less-known and less-published account of theft, deceit and destruction, which is known by company insiders and publicly acknowledged through a teaser on Color Switch's own website: *"As of December 22nd, the Color Switch app has been taken down by the former publisher because they are holding our game hostage."* Color Switch's decision to terminate the agreement between the two partners set in motion an elaborate plan by Fortafy to extort millions of dollars from Color Switch, unlawfully steal valuable intellectual property, and take for itself business opportunities and economic advantages.

5. In violation of its legal obligations, Fortafy refused to transfer to Color Switch the Game and Color Switch's own intellectual property. Along with the source code elements to which Color Switch is entitled, Fortafy retains the Application and Bundle IDs containing user information specific to the Game. That information is property of Color Switch and is necessary for Color Switch to self-publish the game that it created. With the unanticipated theft and unlawful holding hostage of its intellectual property, Color Switch's dream had turned into a nightmare.

6. Unless restrained by this Court, Fortafy will continue to wrongfully possess and effectively steal Color Switch's valuable intellectual property. Color Switch brings this action to

obtain a declaratory judgment that Color Switch is the rightful owner of its intellectual property, to recover its other property that Fortafy has stolen, and to be compensated for its damages.

## II.

## PARTIES

### A. Plaintiffs

7. Plaintiff Color Switch LLC is a California limited liability company with its principal place of business in Bakersfield, California.

8. Plaintiff Color Switch Productions, Inc. is a California corporation with its principal place of business in Bakersfield, California.

### B. Defendant

9. Defendant Fortafy Games DMCC is a corporation organized under the laws of the United Arab Emirates, with its principal place of business in Dubai, United Arab Emirates. According to its website, Fortafy is based in Australia, Dubai, and the United States.[1]

## III.

## JURISDICTION AND VENUE

10. This is an action for declaratory judgment arising under the United States Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "Copyright Act") and 28 U.S.C. §§ 2201 and 2202 (the "Declaratory Judgment Act"). Thus, this court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338. This court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy and share a common nucleus of operative facts with the federal claims.

11. This Court has personal jurisdiction over Defendant because it is doing business in the State of California, and has purposefully availed itself of the privilege of conducting activities

[1] http://fortafygames.com/about.html

in this State and the Eastern District. Plaintiffs reside in this District and created the work that Defendant infringes in this District.

12. Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims has occurred and will continue to occur in the Eastern District of California.

**IV.**

**FACTUAL BACKGROUND**

**A. Plaintiffs And The Color Switch Phenomenon.**

13. Led by its founder, Reichelt, Color Switch is an innovative technology company that has transformed the mobile game space, in the process becoming a veritable phenomenon. But while Color Switch's Game appeared on the surface to be an overnight success, it was, in fact, years in the making.

14. Reichelt was an unlikely candidate to become a famous developer. Having served his country for more than seven years as an Army medic – including during a tour in Iraq – he returned to civilian life and an uncertain future.

15. Seeking his purpose in life, Reichelt pursued various endeavors, including magic, theater, and film. Each of these prospects, however, failed to materialize and Reichelt struggled to find his way, forced to take random jobs including cleaning pools and working as a valet attendant.

16. Reichelt's exploration evolved into an interest in mobile game development when a new roommate gave him the book, *App Empire: Make Money, Have a Life, and Let Technology Work for You*. The idea resonated with Reichelt, and he threw himself into his new passion, learning everything he could about designing apps and mobile games that inspire and engage users, capturing their attention in a sea of competing possibilities. Reichelt devoted years to this effort, but success did not come easily.

17. Reichelt had no shortage of app ideas, only a shortage of resources. With limited experience, Reichelt sold his film gear for $4,000 to outsource the development of his app ideas. Unimpressed with the quality of the work, Reichelt realized that he would need to control the development of his apps in order to perfect the user experience, which, from Reichelt's research, he knew was paramount. To that end, Reichelt obtained a free drag-and-drop app development tool, BuildBox, that allowed him to iterate on hundreds of app ideas, perfecting a trial and error process.

18. With BuildBox, Reichelt developed hundreds of games, but each met with failure. True to his passion and purpose, nothing would stop Reichelt, but it would take more time for things to work out.

19. Reichelt's struggle turned dire when a wrist injury prevented him from cleaning pools. That job had enabled him to make his car payments and he faced imminent repossession – it seemed his dream was over. Having failed time and time again, he was committed to the process and worked tirelessly until, in November 2015, he created a game that worked.

20. Deceptively simple, Color Switch (the Game) is a mobile game in which the player taps the device screen to make a ball jump through a series of obstacles, timing each jump just right so that the color of the ball matches the color of the moving obstacle it seeks to overcome. After clearing various obstacles, the ball changes color, adding further challenge to the gameplay.

**B. <u>The Relationship Between Color Switch And Fortafy</u>.**

21. Reichelt knew that the Game was a winner. But he also knew that he needed a publishing and marketing push for the Game to become successful. To assist in reaching a broad audience, Reichelt hired a publishing company to distribute and market the Game.

22. Although Reichelt's design of the Game had all the elements to make it a success, Reichelt, as a relatively new and unknown developer, lacked negotiation strength. Although Color

Switch negotiated as best it could, it was forced to accept a deal that was overly favorable to the publisher.

23. On November 21, 2015, Reichelt entered into a publishing agreement with EyeBox Games. The publishing agreement was later amended on December 1, 2015. The publishing agreement was superseded and replaced by a new publishing agreement, dated June 16, 2016, between Color Switch LLC and Fortafy Games DMCC (the "Publishing Agreement"). With respect to revenue sharing, the economics of the Publishing Agreement were tremendously favorable to Fortafy. In exchange for publishing and marketing the game that Color Switch had developed, Fortafy would receive 80 percent of net revenues. With the Game's extraordinary success, Fortafy has received millions of dollars.

24. Though the Publishing Agreement was exceedingly generous to Fortafy, Color Switch retained all its intellectual property rights *and* had the option to terminate the agreement after a period of only 18 months. Section 2.3 of the Publishing Agreement provides that Color Switch "retains all copyright and all other intellectual property privileges in connection with the Software, including all original graphics, game design and all rights to the source code elements." The same Section further provides that Color Switch "retains all rights not explicitly granted to" Fortafy.

25. The relationship of the parties confirmed Color Switch's rights. Under the Publishing Agreement, Fortafy performed *work for hire* for Color Switch; published and promoted the game Color Switch created, for Color Switch's benefit, with Fortafy being paid a percent of net revenues as compensation. Because it performed work for hire, within the scope of an employment construct, any work Fortafy performed under the Publishing Agreement or benefits accrued pursuant to such work, belonged to Color Switch.

**C.     Problems in Paradise.**

26.     Although the relationship proved profitable for both parties, it would not last. Given the unique, non-market split of revenue, the Publishing Agreement was unfavorable to Color Switch.  When Reichelt attempted to negotiate a more appropriate split, Fortafy refused.  Therefore, Color Switch decided that it would honor the agreement it made, but that it would terminate the agreement when it had the opportunity to do so.  Thus, as the earliest time possible, Color Switch opted to terminate the agreement, smoothly paving the way for Color Switch to take full control over the Game it had created.  Or so it thought.

27.     On May 26, 2017, Reichelt sent Fortafy a letter of termination: "Pursuant to Clause 12.2 of the Publishing Agreement, this letter will constitute our notice to you that we are electing to terminate the Publishing Agreement, such termination to be effective as of December 15, 2017." The letter anticipated the return of Color Switch's intellectual property and other rights, which it had licensed to Fortafy under the Publishing Agreement.  Color Switch did not foresee any conflict, given Color Switch's clear ownership of those rights under both intellectual property law and the terms of the Publishing Agreement: "We look forward to working with you later this year to ensure a smooth transition of the rights upon the termination of the Publishing Agreement."  Fortafy's response confirmed the parties' shared understanding of their relationship.  Acknowledging receipt of the termination notice, the next day, Fortafy "wish[ed] [Color Switch] the best of luck for [its] upcoming self-publishing."

28.     Consistent with this shared understanding, Color Switch and Fortafy continued to work together amicably throughout the nearly seven months remaining on the Publishing Agreement, and even discussed continuing their relationship on new terms upon the expiration.

29.     Leading up to the termination date of December 15, 2017, Color Switch and Fortafy engaged in extended negotiations to formalize a potential post-Publishing Agreement relationship.

The negotiations continued even beyond the termination date, necessitating a one-week extension of the Publishing Agreement, until December 22, 2017. Despite these efforts, Fortafy rejected Color Switch's terms, thus ending the relationship on its originally-contracted terms.

30. Contemporaneous with the termination of the Publishing Agreement, Color Switch requested that Fortafy de-publish the Game, remove it from all platforms, provide the most recent version of the Game (i.e., source code) to Color Switch, and transfer the Game from Fortafy's developer account to Color Switch's developer account.[2]

31. While Fortafy represented that it had de-published the Game, it refused to provide the current version of the Game or transfer the Game to Color Switch's developer account, instead holding it and all of Color Switch's intellectual and other property rights for its own benefit.

**D. <u>The Damage Done</u>.**

32. Having now been downloaded by more than 200 million users, the Game is among the most popular – and profitable – of all time. Central to the Game's extraordinary success is the design that Reichelt developed. The layout of the Game, its unique gameplay, and its reward system are all aligned to optimize the user experience, creating an experience that is both entertaining and engaging. All these core elements, and the particular expression of these elements combined in the Game, are Reichelt's design and belong to Color Switch.

33. Fortafy's theft of Color Switch's intellectual property has had significant consequences. Unable to complete a smooth transfer of the Game from Fortafy to Color Switch, and thus unable to self-publish the Game as it intended, Color Switch was forced to post a message

[2] Color Switch understands that transfer of the application would also encompass transfer of related valuable property and information rightly belonging to Color Switch, including bundle IDs, app IDs, and the ability to reach customers who downloaded the Color Switch Game, all of which are associated with the application. Color Switch seeks transfer of the application, and related property and information, on all platforms, including Apple, Android, and others.

to its loyal users explaining that the Game was no longer available because it was being "held hostage."

34. In the world of mobile apps and mobile games, users can be fickle. Even in the case of Color Switch's loyal users who love the Game, users who play regularly are highly likely to move on to another game if a particular game is unavailable, or has not been updated with new levels. Thus, for any game, a period of unavailability and stagnation will significantly reduce the active user base and impact the future success of the game. With each passing day, Color Switch loses not only a significant number of users, but also the business opportunities and economic advantages derived from those users. In a reality where users equate to revenue, the damages are real and quantifiable.

35. Fortafy's failure to transfer the Game, which is inextricably linked to the users who already downloaded the Game, means that Color Switch will be unable to provide user experience continuity to its loyal users. These users have already accrued meaningful in-game rewards and made significant in-game purchases, all of which will be lost and unrecoverable if Fortafy's wrongful actions continue.

36. Fortafy's brazen theft of Color Switch's intellectual property is part of a larger pattern of misconduct. After stealing Color Switch's intellectual property and failing to transfer the application, Fortafy published a game called Pigeon Pop. Pigeon Pop's main character is an animated pigeon that is ubiquitously rendered throughout the game. Despite being integral to the design of the game, these renderings are stolen. According to a recent news article, Fortafy stole the artwork for the game from a French artist known as Kéké, who posted a side-by-side comparison of the game's images and his artwork created years prior. The artist is now pursuing legal action against Fortafy. Facebook took notice and suspended Fortafy's page on the site. Although Fortafy

has refused to comment on the dispute, the game remains available, and Fortafy continues to profit from its misconduct.

37. In sum, Fortafy's actions constitute infringement of Color Switch's copyright and theft of its property. Accordingly, Color Switch brings this action to stop Fortafy's unlawful conduct, to obtain a declaration that Color Switch is the sole owner of its intellectual property, and to obtain other relief, including the transfer of the application, necessary to remedy the harm Fortafy has caused.

## V.

## CLAIMS

### A. Count One: Copyright (17 U.S.C. § 101 et seq.).

38. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

39. Color Switch applied for, and received, an exclusive copyright on the Color Switch Game. The copyright remains in force and was effective as of November 2015, when Color Switch developed the Game.

40. On June 16, 2016, Color Switch and Fortafy entered a publishing agreement through which Fortafy would publish the Game. Color Switch provided the Game to Fortafy to publish. At the time, and continuing to the present, Color Switch retained the exclusive copyright on the Game.

41. Because Color Switch hired Fortafy to publish the Game, any work Fortafy did on the Game was done within the scope of its employment for Color Switch, and for Color Switch's benefit, and Color Switch retained the rights to all such work.

42. Even if Fortafy were not to be deemed to be performing work for hire, Color Switch would still retain an exclusive copyright over all versions of the Game. Though Fortafy made

certain modifications to the Game after receiving it from Color Switch, none of those modifications fundamentally altered the essential elements of the Game. The modifications could not be independently copyrightable because they depended on the original Game to which Color Switch holds the exclusive copyright.

43. The version of the Color Switch Game that existed immediately prior to the time that Fortafy de-published the game in December 2017 is derived from the original version of the Game that Color Switch provided, for which Color Switch holds a valid and exclusive copyright.

44. Because the final version of the Color Switch Game is and was derived from the original version that Color Switch provided to Fortafy, Color Switch's copyright extends to that final version and Color Switch has exclusive right to that final version, including the exclusive right to use, reproduce, and publish that version.

45. Fortafy's refusal to return that final version, and its continued use of that version or any portions thereof, thus constitutes a violation of Color Switch's copyright.

46. Fortafy's violation of Color Switch's copyright has caused Color Switch millions of dollars of damages by, among other things, preventing Color Switch from publishing the Game, thereby making the Game accessible to the more than 200 million users who previously downloaded it, and forcing Color Switch to redevelop a new version of the game for publication.

**B. <u>Count Two: Declaratory Judgment (28 U.S.C. § 2201).</u>**

47. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

48. There exists an actual controversy between Color Switch and Fortafy regarding the ownership of the intellectual property comprising the Game.

49. Color Switch applied for, and received, an exclusive copyright for the Game. That copyright remains valid and in force.

50. Color Switch hired Fortafy to publish and market the Game. In so doing, Color Switch provided Fortafy with the Game.

51. Acting within the scope of its employment, during the employment period, and for Color Switch's benefit, Fortafy made certain modifications to the Game.

52. Color Switch thus owns the modifications Fortafy made and all versions of the Game, including the final version Fortafy published in December 2017, because all modifications Fortafy made, and all versions of the Game it created, constitute work for hire belonging to the hiring party, Color Switch.

53. In the alternative, Color Switch owns all modifications Fortafy made and all versions of the Game it published because any modifications derived from the original Game that Color Switch provided to Fortafy, and the modifications lack sufficient originality to be independently copyrightable, resting as they do on the original Game for which Color Switch holds the exclusive copyright. No independent copyright of the modifications or subsequent versions can be recognized without infringing Color Switch's copyright.

54. Color Switch therefore is entitled to a declaration that it has exclusive copyright to the Color Switch Game, including all modifications and all versions published by Fortafy.

55. A declaration of rights is necessary because Color Switch reasonably fears that absent such declaration, Fortafy will use the modifications and versions of the Game it published, or components thereof, to infringe Color Switch's copyright. Color Switch's reasonable fear is based, among other things, on Fortafy's refusal to return the Game, Fortafy's position as a competitor engaged in creating mobile games, and the success of the Game, which Color Switch reasonably believes that Fortafy will attempt to recreate for its own benefit by exploiting the modifications and versions of the Game it published.

56. In addition, Color Switch has a real and reasonable apprehension that Fortafy will attempt to assert copyright infringement against Color Switch when Color Switch self publishes the Game. Color Switch's real and reasonable apprehension is based on, among other things, Fortafy's refusal to return the Game and related property, combined with Fortafy's position as a competitor engaged in creating mobile games, and its desire to exploit the Game and associated property.

**C. <u>Count Three: Breach Of Contract</u>.**

57. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

58. On June 16, 2016, Color Switch and Fortafy entered a Publishing Agreement (the "Agreement").

59. Color Switch has performed all its obligations under the Agreement.

60. On May 26, 2017, in accordance with the requirements of the Agreement, Color Switch provided notice to Fortafy that Color Switch would terminate the Agreement effective December 15, 2017.

61. Under the Agreement, Fortafy was required to return to Color Switch the Game following termination of the Agreement. As of the filing of this action, Fortafy has refused to do so, in violation of the Agreement.

62. Under the Agreement, Fortafy was required to transfer the application associated with the Game following termination of the Agreement. As of the filing of this action, Fortafy has refused to do so, in violation of the Agreement.

63. Fortafy's breaches of the Agreement have caused Color Switch millions of dollars of damages by, among other things, preventing Color Switch from publishing the Game, and making the Game accessible to the more than 200 million users who previously downloaded it.

**D. Count Four: Conversion.**

64. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

65. Color Switch holds the exclusive ownership and right to its personal property, including, but not limited to, all versions of, and modifications to, the Game, the application associated with the Game, and money due to Color Switch under the Publishing Agreement.

66. Fortafy's refusal to return the Game, to transfer the application from Fortafy's developer account to Color Switch's developer account, and to pay all amounts due under the Publishing Agreement, constitute intentional acts causing substantial interference with Color Switch's property rights.

67. Fortafy's intentional acts causing substantial interference with Color Switch's property rights have caused Color Switch to suffer damages as, among other things, Color Switch has been unable to publish the Game to the more than 200 million people who downloaded it, and to use the money due to it under the Publishing Agreement.

## VI.

## PRAYER

WHEREFORE Plaintiffs request that the Court enter judgment in their favor and award them the following relief against Defendant Fortafy:

a. a declaration that (1) Color Switch owns the exclusive copyright to the Color Switch Game, including all modifications to, and versions of, the Game; and (2) Color Switch is the rightful owner of the application, which Fortafy must immediately transfer from its developer account to Color Switch's developer account;

b. compensatory damages;

c. consequential damages;

d. reasonable and necessary attorneys' fees;

e. treble damages;

f. permanent injunctive relief: (1) prohibiting Fortafy from infringing Color Switch's copyright; (2) prohibiting Fortafy from using information from the application that rightfully belong to Color Switch; and (3) providing such other necessary and appropriate injunctive relief to remedy Fortafy's unlawful conduct;

g. prejudgment and post judgment interest at the highest lawful rates;

h. costs of court; and

i. all other appropriate relief the Court deems justified.

Dated: March 26, 2018

Respectfully submitted,

By: */s/ Dylan Mefford*

William A. Brewer III
Pro Hac Vice Pending
wab@brewerattorneys.com
Michael J. Collins
Pro Hac Vice Pending
mjc@ brewerattorneys.com
Dylan Mefford
State Bar No. 268969
dmefford@brewerattorneys.com

1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFFS COLOR SWITCH LLC AND COLOR SWITCH PRODUCTIONS, INC.**