# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLOR SWITCH LLC and COLOR SWITCH PRODUCTIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FORTAFY GAMES DMCC, <br><br> Defendant. | Case No.: 1:18-cv-0419 - DAD - JLT <br><br> ORDER GRANTING PLAINTIFFS' MOTION FOR SERVICE OF PROCESS VIA ALTERNATIVE MEANS <br><br> (Doc. 7) |

Color Switch LLC and Color Switch Productions, Inc. contend they entered into an agreement concerning a mobile game with Fortafy Games DMCC, which was breached. Color Switch contends Fortafy is liable for breach of contract, copyright violation, and conversion. (*See generally* Doc. 1) Color Switch requests that it be permitted to serve the complaint and summons in this action upon the Defendant through email. (Doc. 7) For the reasons set forth below, Plaintiffs' motion is **GRANTED**.

**I.      Background**

Color Switch is a mobile game application that was created by David Reichelt in November 2015. (Doc. 1 at 3, ¶¶ 1-3) Plaintiffs assert that "Reichelt entered into a publishing agreement with EyeBox Games" on November 21, 2015. (*Id.* at 8, ¶ 23) Plaintiffs allege, "The publishing agreement was later amended on December 1, 2015. The publishing agreement was superseded and replaced by a new publishing agreement, dated June 16, 2016, between Color Switch LLC and Fortafy Games DMCC." (*Id.*)

According to Plaintiffs, the publishing agreement with Defendant Fortafy Games provided that "[i]n exchange for publishing and marketing the game that Color Switch had developed, Fortafy would receive 80 percent of net revenues." (Doc. 1 at 8, ¶ 23) In addition, the agreement provided that "Color Switch retained all its intellectual property rights and had the option to terminate the agreement after a period of only 18 months." (*Id.*, ¶ 24) (emphasis omitted) Due to the success of the game— which Plaintiffs report has "been downloaded by more than 200 million users" — Fortafy received millions of dollars. (*Id.*, ¶¶ 23, 32)

Plaintiffs allege, "When Reichelt attempted to negotiate a more appropriate split, Fortafy refused." (Doc. 1 at 9, ¶ 26) Therefore, Plaintiffs decided to terminate the agreement pursuant to the terms, and sent a letter of termination to Fortafy on May 26, 2017, with the termination to be effective December 15, 2017. (*Id.*, ¶¶ 26-27) Plaintiffs asserted they "icipated the return of Color Switch's intellectual property and other rights, which it had licensed to Fortafy under the Publishing Agreement." (*Id.*, ¶ 27) According to Plaintiffs, the next day Fortafy acknowledged receipt of the termination notice and wished Color Switch "the best of luck for [its] upcoming self-publishing." (*Id.*)

Plaintiffs assert the parties worked "amicably throughout the nearly seven months remaining on the Publishing Agreement, and even discussed continuing their relationship on new terms upon the expiration." (Doc. 1 at 9, ¶ 28) Due to the negotiations, the parties entered "a one-week extension of the Publishing Agreement, until December 22, 2017." (*Id.* at 10, ¶ 29) However, the negotiations failed when Fortafy rejected Plaintiffs' terms. (*Id.*)

According to Plaintiffs, "with the termination of the Publishing Agreement, Color Switch requested that Fortafy de-publish the Game, remove it from all platforms, provide the most recent version of the Game (i.e., source code) to Color Switch, and transfer the Game from Fortafy's developer account to Color Switch's developer account." (Doc. 1 at 10, ¶ 30) Plaintiffs allege, "While Fortafy represented that it had de-published the Game, it refused to provide the current version of the Game or transfer the Game to Color Switch's developer account, instead holding it and all of Color Switch's intellectual and other property rights for its own benefit." (*Id.*, ¶ 31)

Plaintiffs report that after Fortafy did not transfer the game, "Color Switch was forced to post a message to its loyal users explaining that the Game was no longer available because it was being "held

hostage." (Doc. 1 at 10-11, ¶ 33) Plaintiffs assert allege, "With each passing day, Color Switch loses not only a significant number of users, but also the business opportunities and economic advantages derived from those users." (*Id.*, ¶ 34)

Based upon the foregoing facts, Plaintiffs contend Fortafy is liable for "infringement of Color Switch's copyright and theft of its property." (Doc. 1 at 12, ¶ 37) On March 26, 2018, Plaintiffs filed the complaint in this action through which they seek to hold Fortafy liable for violations of the Copyright Act, breach of contract, and conversion. (*See generally id.* at 12-16) In addition, Plaintiffs seek declaratory and injunctive relief, including "a declaration that Color Switch is the sole owner of its intellectual property' and an order for "the transfer of the application." (*Id.* at 12, ¶ 37)

On April 23, 2018, Plaintiffs filed the motion now pending before the Court, seeking leave to serve the summons and complaint upon Fortafy through email. (Doc. 7)

## II. **Alternative Service**

Rules 4(h)(2) and Rule 4(f) of the Federal Rules of Civil Procedure govern service on a foreign business entity. Rule 4(h)(2) authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f), which permits service outside a judicial district of the United States "by ... other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Accordingly, "service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement." *Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). "No other limitations are evident" for service under Rule 4(f)(3). *Id.*

In order to serve a defendant under Rule 4(f)(3), a plaintiff is not required to first attempt service under Rule 4(f)(1) or (2). *See Rio*, 284 F.3d at 1014-15 ("court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)"); *Brown v. China Integrated Energy, Inc*., 285 F.R.D. 560, 563 (C.D. Cal. 2012) ("A plaintiff need not pursue other methods of service before requesting that the court authorize an alternative method"). Courts have discretion to authorize a variety of service methods under Rule 4(f)(3), including service through email. *Rio*, 284 F.3d at 1016 ("trial courts trial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email").

For a court to authorize service under Rule 4(f)(3), the method of service requested "must also comport with constitutional notions of due process." *See Rio*, 284 F.3d at 1016. The Supreme Court determined a proposed method of service meets this requirement where it is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

### III. Discussion and Analysis

Plaintiffs report that in the publishing agreement with Fortafy, it "represented its address as: FORTAFY GAMES DMCC Unit Number: 30-01-3141 - Jewellery and Gemplex 3 Building Jumeirah Lakes tower, Dubai, United Arab Emirates." (Doc. 7 at 5) In addition, Plaintiffs report "[m]ultiple webpages also reflect this address as being associated with Fortafy," and Fortafay's own website indicates "that it is based, at least in part, in Dubai." (*Id.*) Plaintiffs hired Process Service Network, LLC to serve Fortafy at this address in Dubai. (*See* Doc. 7-1 at 1, Farriday Decl. ¶¶ 3-4) Process Service Network then assigned Ijab Farriday, a process server who has "been engaged in connection with service of process on defendants located in UAE on at least 70 separate occasions in the past 19 years to complete the service on March 29, 2018. (*Id.*, ¶¶ 2-4) According to Mr. Farriday, he went to the business address identified on April 2, but "did not see any reference to Fortafy on the directory." (*Id.*, ¶ 5) Mr. Farriday reports he "then visited the office of the building manager, Mr. Kisi, and inquired as to his knowledge of a tenant named Fortafy," and the manager "found no record of Fortafy." (*Id.* at 1-2, ¶5) Plaintiffs now assert that "alternative service is necessary and appropriate" in this action, because they "have been unable to serve Fortafy at its only known address." (Doc. 7 at 10, emphasis omitted)

Significantly, the United Arab Emirates is "not a party to The Hague Service Convention or any other treaty related to service of process." (Doc. 7 at 5, n. 8); *see also Orsi v. Sheik Falah Bin Zayed Bin Sultan Al-Nahyan*, 2012 WL 4469120 at *2 (Dist. Mass. Sept. 25, 2012) (noting "the United Arab Emirates … is not a party" to the Hague Convention and the court was "not aware of any other agreement on service of process between the United States and the UAE"); *Nabulsi v. H.H. Sheikh Issa Bin Zayed Al Nahyan*, 2007 WL 2964817 at *4 (S.D. Tex. Oct.9, 2007) (observing the UAE was not a

party to the Hague convention). Thus, Plaintiffs need only to obtain permission from the Court to serve Fortafy through an alternative means.

Plaintiffs request leave to serve Fortafy through email, asserting that "[s]ervice by email is particularly appropriate here because Fortafy, as a publisher of mobile gaming applications, is engaged in a high-tech business, conducts its business – including past correspondence with Plaintiffs – via email." (Doc. 7 at 10-11) In addition, Plaintiffs assert that Fortafy previously "indicated its preference to communicate *only* by email." (*Id.*) According to Plaintiffs:

> [L]ike the defendant in *Rio Properties*, Fortafy "particularly has embraced the modern e-business model and profited immensely from it. In fact, [Fortafy] structured its business such that it could be contacted *only* via its email address. [Fortafy] listed no easily discoverable street address in [Dubai]. Rather, on its website and print media, [Fortafy] designated its email address as its preferred contact information." Here, as in that case: "If any method of communication is reasonably calculated to provide [Fortafy] with notice, surely it is email—the method of communication which [Fortafy] utilizes and prefers.

(*Id.* at 11, alterations in original) Therefore, Plaintiffs request they be permitted to serve Fortafy at the email address that appears on Fortafy's website, three email addresses recently used by Fortafy's co-founders and principals to communicate to Plaintiffs. (*Id.* at 12)

As Plaintiffs observe, in *Rio Properties* the Ninth Circuit approved email as a means used to effect service on a foreign company. *Id.*, 284 F.3d at 1007. The court Concluded that email service was appropriate because it appeared to be the only reliable method for contacting the foreign defendant. The plaintiff first attempted to serve the defendant at the address used to register the defendant's domain name and through the defendant's lawyer. *Id.* at 1013. When those attempts failed, the plaintiff searched for the defendant in its native country. *Id.* When that effort failed as well, the plaintiff asked the court to allow service by e-mail. *Id.* Since the foreign company did not appear to maintain an office or to use a physical address where service could be made, and instead maintained an internet website and used an e-mail address as its preferred means of communicating with its clients, the Ninth Circuit concluded that service via email was reasonably calculated to provide the defendant notice. *Id.* at 1014-18.

Similarly, Plaintiffs first attempted serve upon Fortafy at the physical address identified in Dubai, only to find Fortafy was not known at the address. In addition, Fortafy has clearly indicated its

preference to only communicate through email, and the co-founders of Fortafy have recently been in contact with Plaintiffs through several email addresses. Thus, service at the addresses identified by Plaintiffs satisfies the due process requirement for the service method "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Properties*, 284 F.3d at 1016; *Mullane*, 339 U.S. at 314.

## IV.     Conclusion and Order

Based upon the foregoing, the Court finds service via email is appropriate in this action. Accordingly, the Court **ORDERS**:

1. Plaintiffs' motion for alternative service is **GRANTED**;
2. Plaintiffs **SHALL** serve Defendant through the following email addresses: contact@fortafygames.com, eyeboxgames@gmail.com, zebjaffer@gmail.com, and fortafy@gmail.com.

IT IS SO ORDERED.

Dated:     **May 21, 2018**                    **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE