UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

COLOR SWITCH LLC and COLOR SWITCH PRODUCTIONS, INC.,

Plaintiffs,

v.

FORTAFY GAMES DMCC,

Defendant.

No. 1:18-cv-00419-DAD-JLT

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

(Doc. No. 9)

This matter is before the court on a motion to dismiss plaintiffs Color Switch Productions, Inc. and Color Switch LLC's (collectively, "plaintiff" or "Color Switch") complaint based on the enforcement of a forum selection clause filed on behalf of defendant Fortafy Games DMCC ("Fortafy"). (Doc. No. 9.) A hearing on the motion was held on July 17, 2018. Attorneys Dylan Mefford and Michael Collins appeared telephonically on behalf of Color Switch, and attorney Mehrnaz Boroumand Smith appeared on behalf of Fortafy. The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, will grant defendant's motion to dismiss without leave to amend.

**BACKGROUND**

Color Switch is a technology company based in Bakersfield, California. (Doc. No. 1 at ¶¶ 7–8, 13.) In November of 2015, David Reichelt, the founder of Color Switch, developed the

1

Color Switch game (the "game"), a mobile application—that has now been downloaded more than two hundred million times—"in which the player taps the device screen to make a ball jump through a series of obstacles, timing each jump just right so that the color of the ball matches the color of the moving obstacle it seeks to overcome. After clearing various obstacles, the ball changes color, adding further challenge to the gameplay." (Doc. No. 1 at ¶¶ 1, 19, 20.) Color Switch alleges that "Reichelt knew the Game was a winner[] [b]ut he also knew that he needed a publishing and marketing push for the Game to become successful." (*Id.* at ¶ 21.) Thus, on November 21, 2015, Reichelt entered into a publishing agreement (the "original agreement") with EyeBoxGames FZE ("EyeBoxGames"). (*Id.* at ¶ 23; *see also* Doc. No. 9-3.) EyeBoxGames is a publishing company incorporated in the United Arab Emirates ("UAE") and founded by Marc Lejeune, who is also the founder of defendant Fortafy.[1] (Doc. No. 9-1 at 2–4.)

The original agreement states that EyeBoxGames is the publisher and Reichelt and his business partner, Aditya Oza, are the developers. (*Id.* at 4.) The original agreement includes a forum selection clause, stating that "[the] Agreement and any non-contractual obligations arising out of or in connection with th[e] Agreement shall be governed by[] and construed in accordance with UNITED ARAB EMIRATES law. Any dispute arising in connection with th[e] Agreement shall be submitted to the exclusive jurisdiction of the Court of Dubai." (*Id.*; *see also* Doc. No. 9-3 at 10.) Under the original agreement, the parties agreed to an equal share of the revenue once the game became publishable. (*Id.* at 7.)

On January 12, 2016, purportedly to reflect that EyeBoxGames would be solely responsible for updates to the game, the parties renegotiated the original agreement, changing the terms of the equal profit share to an eighty percent profit share in favor of EyeBoxGames (the

---

[1] These, and other, facts are not included in plaintiff's complaint but are included in and supported by declarations attached to defendant's motion to dismiss. The court may properly rely on facts outside of the complaint here because a motion to dismiss based on the enforcement of a forum selection clause is governed by Federal Rule of Civil Procedure 12(b)(3), *see Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996), and, "[u]nlike a Rule 12(b)(6) motion, a motion under Rule 12(b)(3) does not require that the pleadings be accepted as true. The court is permitted to consider facts outside of the pleading," *Graham Tech. Sols., Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1431 (N.D. Cal. 1997) (internal citations omitted).

"amended agreement"). (Doc. No. 9-1 at 5; *see also* Doc. No. 9-4.) In addition, the amended agreement provides that "David Reichelt and Aditya Oza do not get any right on the work of updating conducted by EyeBoxGames." (Doc. No. 9-4 at 2.) Finally, the amended agreement notes that provisions from the original agreement that were not modified by the amended agreement remain in effect, and no amendment was made to the forum selection clause or choice of law provision set forth in the original agreement. (*Id.*)

In April of 2016, Fortafy incorporated in the UAE. (Doc. No. 9-1 at 2–3, 5.) On June 16, 2016, the amended agreement between Reichelt, Oza, and EyeBoxGames was terminated when Color Switch and Fortafy entered into a new publishing agreement (the "publishing agreement"). (*Id.* at 5; *see also* Doc. No. 9-5.) That publishing agreement established that Color Switch would retain its intellectual property rights and had the option to terminate the agreement after a period of eighteen months. (Doc. No. 1 at ¶ 24; *see also* Doc. No. 9-5.) Color Switch alleges that, under the publishing agreement, Fortafy was to perform "work for hire" on behalf of Color Switch, and thus any work Fortafy performed under the operative agreement or benefits accrued pursuant to such work belong to Color Switch. (Doc. No. 1 at ¶ 25.) However, similar to the amended agreement before it, the publishing agreement states that the "Developer [Color Switch] does not get any right on the work of updating conducted by the Publisher [Fortafy]." (Doc. No. 9-5 at 3.) The publishing agreement also maintains the eighty percent profit share in favor of the publisher, Fortafy. (*Id.* at 6.) Finally, the publishing agreement contains a forum selection clause and choice of law requirement that are identical to the ones contained in the original and amended agreements. (*Id.* at 9.)

On May 26, 2017, Color Switch sent Fortafy a letter of termination, terminating the publishing agreement effective as of December 15, 2017. (*Id.* at ¶ 27.) Color Switch also sought the return of its intellectual property and other rights, which it alleges it licensed to Fortafy under the publishing agreement. (*Id.*) Fortafy acknowledged receipt of the termination notice. (*Id.*)

After the termination of the publishing agreement, Color Switch requested that Fortafy de-publish the game, provide the most recent version of the game to Color Switch, and transfer the game from Fortafy's developer account to Color Switch's developer account. (*Id.* at ¶ 30.)

3

Fortafy de-published the game but has refused to provide the current version of the game to Color Switch or to transfer the game to Color Switch's developer account. (*Id.* at ¶ 31.)

Color Switch contends that Fortafy's actions have prevented it from being able to publish the game. Accordingly, Color Switch asserts four causes of action against Fortafy: (1) a copyright claim pursuant to 17 U.S.C. § 101 *et seq.*; (2) a request for a declaratory judgment pursuant to 28 U.S.C. § 2201; (3) a breach of contract claim; and (4) a conversion claim. (*Id.* at 12–16.) Color Switch seeks declaratory relief, injunctive relief, compensatory damages, consequential damages, treble damages, attorneys' fees, and other fees. (*Id.* at 16–17.)

On June 12, 2018, Fortafy filed a motion to dismiss this action based on the enforcement of the publishing agreement's forum selection clause. (Doc. No. 9.) On July 3, 2018, Color Switch filed an opposition and, on July 10, 2018, Fortafy filed a reply. (Doc. Nos. 11, 13.) At the July 17, 2018 hearing on the pending motion, the court permitted Color Switch to file a sur-reply and Fortafy to submit a letter in response. (Doc. No. 17.) On July 31, 2018, Color Switch filed its sur-reply, and on August 6, 2018, Fortafy submitted its letter in response. (Doc. Nos. 22, 23.)

On March 8, 2019, Fortafy filed a request asking this court to take judicial notice of the pending litigation between the parties before the Court of Dubai and Color Switch's application for a trademark registration in the UAE. (Doc. No. 32.)

**LEGAL STANDARD**

A motion to dismiss based on the enforcement of a forum selection clause is governed by Federal Rule of Civil Procedure 12(b)(3). *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996); *see also Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). "Unlike a Rule 12(b)(6) motion, a motion under Rule 12(b)(3) does not require that the pleadings be accepted as true. The court is permitted to consider facts outside of the pleading." *Graham Tech. Sols., Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1431 (N.D. Cal. 1997) (citing *Argueta*, 87 F.3d at 324); *see also Doe 1*, 552 F.3d at 1081. Moreover, "in the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."

4

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004); *see also Petersen v. Boeing Co.*, 715 F.3d 276, 279 (9th Cir. 2013). Finally, "[i]nterpretation and enforcement of contractual forum selection clauses are procedural issues to be decided under federal law." *Graham Tech.*, 949 F. Supp. at 1431 (citing *Manetti-Farrow, Inc. v. Gucci America*, 858 F.2d 509, 513 (9th Cir. 1988)).

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Under the *forum non conveniens* analysis, the initial inquiry is whether the forum selection clause is valid. The Supreme Court has found that forum selection clauses are presumptively valid and should be honored "absent some compelling and countervailing reason." *Murphy*, 362 F.3d at 1140 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)); *see also Atl. Marine*, 571 U.S. at 66 ("In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain."). As such, the "party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" *Murphy*, 362 F.3d at 1140. (quoting *Bremen*, 407 U.S. at 15). There are three grounds upon which the challenging party can show that the forum selection clause is unreasonable and should not be enforced:

> (1) 'if the inclusion in the agreement was the product of fraud or overreaching'; (2) 'if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced'; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'

*Murphy*, 362 F.3d at 1140 (citing *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) and *Bremen*, 407 U.S. at 12–13) (internal quotation marks omitted); *see also Petersen*, 715 F.3d at 280.

Once a court finds that a forum selection clause is valid, it must balance public interest factors to determine whether dismissal of the action in favor of the other forum would promote justice. *See Scales v. Badger Daylighting Corp.*, 1:17-cv-00222-DAD-JLT, 2017 WL 2379933, at *6 (E.D. Cal. June 1, 2017). The *forum non conveniens* analysis ordinarily involves a

5

balancing of both public and private interest factors but, where a court finds the forum selection clause at issue is valid, it need not consider the private interest factors. *Atl. Marine*, 571 U.S. at 64; *Sun v. Kao,* 170 F. Supp. 3d 1321, 1325 (W.D. Wash. 2016); *Adema Techs. Inc. v. Wacker Chemie AG*, No. 13-CV-05599-BLF, 2014 WL 3615799, at *2 (N.D. Cal. July 22, 2014), *aff'd sub nom. Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661 (9th Cir. 2016) (citing *Atl. Marine*, 571 U.S. at 64). Under these circumstances, a court should only consider public interest factors such as: "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Adema Techs. Inc.*, 2014 WL 3615799, at *2 (citing *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Atlantic Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981))).

## ANALYSIS

Fortafy moves to dismiss this action, arguing that: (1) the publishing agreement's forum selection clause is valid; and (2) the public interest factors weigh in favor of enforcing the forum selection clause. (Doc. No. 9-1 at 9–11.) In response, Color Switch contends that: (1) the forum selection clause does not apply to its copyright and declaratory relief claims; (2) the forum selection clause is unenforceable; and (3) the private and public interest factors weigh against enforcement of the forum selection clause. (Doc. No. 11 at 16–29.)

**A. Whether the Forum Selection Clause Applies to Color Switch's Copyright and Declaratory Relief Claims.**

Prior to applying the *forum non conveniens* analysis, the court must find that Color Switch's claims are within the scope of the forum selection clause. *See Graham Tech*, 949 F. Supp. at 1431 (first evaluating the "threshold issue" of the applicability of the forum selection clause to the plaintiff's claims).

Although the Ninth Circuit has not opined on whether the scope of a forum selection clause covers copyright claims, it has found that forum selection clauses can apply to tort claims where the resolution of such claims requires the interpreting of a contract that includes a forum selection clause. *See Manetti-Farrow*, 858 F.2d at 514 ("Whether a forum selection clause

6

applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract.") As a result, district courts in the Ninth Circuit have found that copyright infringement claims that require interpretation of an underlying contract, which includes a forum selection clause, may therefore fall within the scope of the contract's forum selection clause. *See, e.g.*, *Questrel, Inc. v. Merriam-Webster, Inc.*, No. SACV 10-1907 AG MLGX, 2011 WL 7637786, at *3 (C.D. Cal. Mar. 23, 2011) (applying *Manetti-Farrow* and finding that a forum selection clause in the parties' agreement governed the action because resolution of plaintiff's copyright infringement claims required interpretation of an agreement containing the forum selection clause); *Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, No. 2:10-CV-02991-JHN, 2010 WL 5154136, at *3 (C.D. Cal. Aug. 12, 2010) (same); *Graham Tech.*, 949 F. Supp. at 1433 (same); *see also Pinnacle Fitness & Recreation Mgmt., LLC v. Jerry & Vickie Moyes Family Tr.*, No. 08-CV-1368 W (POR), 2009 WL 10664872, at *4 (S.D. Cal. Sept. 8, 2009) ("Forum selection clauses are not strictly limited to contractual causes of action. They have been found applicable to copyright claims.")

Color Switch argues that the approach laid out in *Manetti-Farrow* does not apply here because United States district courts have exclusive jurisdiction over copyright and declaratory judgment claims. (Doc. No. 11 at 16–17.) First, Color Switch argues that the Copyright Act vests exclusive jurisdiction over its copyright claim to the United States district courts because "[t]he district courts shall have exclusive jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright." 28 U.S.C. § 1338(b). This argument is unpersuasive. The Ninth has recognized that

> there is simply no support for [the] argument that 28 U.S.C. § 1338(b) bars [foreign courts] from applying United States copyright law. That statute clearly grants United States district courts jurisdiction over copyright claims 'exclusive of the courts of the states,' not exclusive of the courts of foreign nations.

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995).

Next, Color Switch contends that the Declaratory Judgment Act vests exclusive jurisdiction over its declaratory judgement claim to the United States district courts. *See* 28 U.S.C. § 2201. Color Switch's reliance on § 2201 is also unavailing. Color Switch seeks a

declaration that it "has exclusive *copyright* to the Color Switch game." (Doc. No. 1 at 14 (emphasis added).) Thus, the declaratory relief claim is derivative of the copyright claim and, as discussed below, the copyright claim is within the scope of the parties' forum selection clause. Contrary to Color Switch's contention, it has been recognized that claims for declaratory relief "do not fall outside of the forum-selection clause simply because they sound in equity." *Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-CV-00920-LB, 2016 WL 4259126, at *7 (N.D. Cal. Aug. 12, 2016). Moreover, here, the forum selection clause does not exempt the equitable relief sought here, since by its terms the clause covers "[*a*]*ny* dispute arising in connection with this Agreement." (Doc. No. 9-5 at 9 (emphasis added).) Even if the forum selection clause did exempt equitable relief, "it is not clear that [a plaintiff] could elude the clause by casting its . . . claims in equity." *Glob. Quality Foods, Inc.*, 2016 WL 4259126, at *7; *see also Premiere Radio Networks, Inc. v. Hillshire Brands Co.*, No. CV 12-10199 CAS PJWX, 2013 WL 5944051, at *3 (C.D. Cal. Nov. 4, 2013) ("Because Hillshire's claim for declaratory relief replicates its claims for indemnification and breach of contract, the Court finds that the declaratory relief claim does not fall within the forum selection clause's exception for equitable relief. If it did, both Images USA or Hillshire could always evade the forum selection clause by styling their contractual claims as claims for declaratory relief.")

      Finally, Color Switch urges this court to adopt the Second Circuit approach with regard to copyright claims and forum selection clauses. The Second Circuit has held that a copyright dispute does not arise under a contract if a plaintiff "denies that the contract has any role or relevance what[so]ever with respect to his copyright claims" and the contract is "only relevant as a defense in th[e] suit." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 391 (2d Cir. 2007). The court in *Phillips* found support for its position in a prior Second Circuit opinion, *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679 (2d Cir. 1993). In *Corcovado*, the court had held that "where a plaintiff sues for copyright infringement and asserts no rights under a contract with the defendant containing a forum-selection clause, the forum-selection clause has no effect." *Corcovado Music Corp.*, 981 F.2d at 682. However, Color Switch's reliance on these decisions is misplaced here.

8

First, district courts in this circuit have explicitly rejected *Phillips* and *Corcovado* to the extent that either of those case stands for the proposition that copyright claims can never fall within the scope of a forum selection clause. *See, e.g., Graham Tech.*, 949 F. Supp. at 1433 (rejecting *Phillips* and *Corcovado* and adopting the Ninth Circuit approach adopted in *Manetti-Farrow*); *Bagdasarian Prods., LLC*, 2010 WL 5154136, at *3 n.3 (same); *Questrel, Inc.*, 2011 WL 7637786, at *3 (same).[2]

Second, it does not appear that the holdings in *Phillips* or *Corcovado* support Color Switch's position. Here, Color Switch *has* asserted rights under the publishing agreement containing the forum selection clause. (*See* Doc. No. 1.) Moreover, the Second Circuit in *Phillips* noted that "it is inappropriate . . . to depend solely on the legal labels used by plaintiff to decide if his case arises out of the contract. . . . [W]e recognize the plaintiff is in charge of deciding what law he will rely upon in bringing the suit, [but] . . . [i]t does not follow that [the] plaintiff is the master to decide the meaning of a disputed contractual provision." 494 F.3d at 388 (internal citations omitted).

Having rejected Color Switch's arguments, the court will apply the *Manetti-Farrow* framework to determine whether resolution of Color Switch's copyright and declaratory relief claims require interpretation of the publishing agreement and are thereby within the scope of the publishing agreement's forum selection clause. *Manetti-Farrow, Inc.*, 858 F.2d at 514. Addressing this point, Color Switch argues that resolution of its copyright and declaratory relief claims does not require analyzing the publishing agreement because: (1) its copyright in the game predates the publishing agreement (Doc. No. 11 at 17); and (2) its copyright claim is based

---

[2] Color Switch contends that these cases are distinguishable from the present one because, "in each of the[se] cases, dismissal meant merely that the copyright claims would be heard by another United States federal judge, applying the Copyright Act and principles of United States federal law," and not that the case would be transferred to a foreign forum. (Doc. No. 22 at 9–10.) According to Color Switch, this distinction makes this case one of first impression because "Color Switch faces a more dire concern: extinguishment of its Copyright Act claim and declaratory judgment request." (*Id.* at 10.) However, under the *forum non conveniens* analysis, Color Switch's concerns in this regard are more appropriately addressed later in the analysis. If the court finds that the forum selection clause at issue is valid, then Color Switch, as the party challenging enforcement of the clause, can argue that enforcement of the clause might deprive it of its day in court. *See Murphy*, 362 F.3d at 1140.

on its creation and authorship of the game, (Doc. Nos. 11 at 13). As explained below, the court is not persuaded by these arguments.

First, Color Switch's position is belied by the claims it has asserted in this action. Its copyright claim explicitly states that "any work Fortafy did on the Game was done within the scope of its employment for Color Switch," and that such work constitutes "work-for-hire." (Doc. No. 1 at 12–13.) To the extent that Color Switch is arguing that Fortafy was hired on a "work-for-hire" basis, it would need to establish, among other facts, that "the parties *expressly agree*[*d*] *in a written instrument* signed by them that the work shall be considered a work made for hire." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 738 (1989) (quoting 17 U.S.C. § 101) (emphasis added). Thus, Color Switch's copyright claim necessarily requires analyzing the publishing agreement to determine whether Fortafy was, in fact, hired on a "work-for-hire" basis. In attempting to circumvent this conclusion, Color Switch argues that it "advance[s] two separate and distinct copyright theories, one based on the 'work for hire' doctrine, *which arguably could involve interpretation of the contract*, and one based on the derivative work argument, which does not relate to the contract at all." (Doc. No. 22 at 9 n. 20) (emphasis added). However, Color Switch was the master of its claims, and it chose to allege claims that require interpreting the publishing agreement to resolve; it cannot now evade the consequences of that decision by asking the court to ignore those claims.

More importantly, even Color Switch's copyright claim based on a derivative work theory requires interpretation of the publishing agreement. Color Switch would have the court believe that the dispute between the parties is the result of Fortafy creating a derivative version of the game and that, therefore, all the court must do to evaluate its copyright claim is compare the original version of the game to the version that existed in December of 2017. (Doc. No. 22 at 8, 11.) But Fortafy did not create updates to the game in a vacuum; Color Switch contracted with Fortafy to publish and provide updates to the game. Moreover, the parties' agreement explicitly states that Fortafy is to "take[] care of the development of any updates to the Software" and that Color Switch "do[es] not get any right on the work of updating conducted by [Fortafy]." (Doc. No. 9-5 at 3.) While it is true, as Color Switch points out, that the publishing agreement also

10

states that "[Color Switch] retains all copyright and all other intellectual property privileges in connection with the Software, including all original graphics, game design and all rights to the source code elements," (*id.*), Color Switch's reliance on this language does not alter the conclusion that its copyright claim requires interpreting the publishing agreement. In fact, it strengthens that conclusion because a court will be required to analyze the different clauses in the publishing agreement to determine what rights and obligations were conferred to which party to determine whether the updates Fortafy created, and continues to have possession of, infringe on Color Switch's copyright in the game. *See Questrel, Inc.*, 2011 WL 7637786, at *3 ("This claim about whether a certain action was taken within the scope of the License Agreement is 'in connection with' the terms of that Agreement. If the Court were unable to consider the terms and scope of the License Agreement, the claim would be rendered incomprehensible.") Resolution of Color Switch's copyright claim in this action is therefore inextricably linked to the publishing agreement.

For all of these reasons, the court concludes that Color Switch's claims are within the scope of the publishing agreement's forum selection clause.

**B.    Whether the Forum Selection Clause is Valid.**

Next, the court must determine whether the forum selection clause in the publishing agreement is valid. "Forum-selection clauses . . . are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10; *see also Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 457 (9th Cir. 2007). "The party challenging the clause bears a 'heavy burden of proof and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Murphy*, 362 F.3d at 1140 (quoting *Bremen*, 407 U.S. at 15).

Color Switch argues that here: (1) the inclusion of the forum selection clause was the product of fraud, coercion, and overreaching; (2) enforcement of the clause would deprive it of its day in court; and (3) the United States has a strong public policy interest in enforcing the

/////

11

1 | Copyright Act. (Doc. No. 11 at 19–23.) Color Switch also argues that the public interest factors
2 | weigh in favor of keeping this action before this court. (*Id.* at 27–29.)

        1.    <u>The Forum Selection Clause Was Not the Product of Fraud, Coercion, or Overreaching.</u>

As noted, Color Switch first argues that the forum selection clause is unenforceable because the inclusion of the clause was the product of fraud, coercion, and overreaching. (Doc. No. 11 at 19.) It alleges that Reichelt and Oza were not represented during the negotiations of the original and amended agreements and would not have agreed to the terms of those agreements, including the forum selection clause, had they had counsel. (*Id.*) Color Switch further contends that, at the time the original agreement was entered into, Reichelt and Color Switch were in "dire financial straits" and that Lejeune and EyeBoxGames were "well-aware" of Reichelt's circumstances and "took advantage of him to obtain terms, including the forum selection clause and choice of law precision, that Color Switch otherwise would not have accepted." (*Id.*) With respect to the amended agreement, Color Switch contends that EyeBoxGames coerced Reichelt and Color Switch, who were still unrepresented, to accept an amendment giving EyeBoxGames an eighty percent share of the revenue split. (*Id.* at 20.) With respect to the publishing agreement, Color Switch alleges that, despite having obtained counsel for these negotiations, its counsel's presence was "immaterial because the previous agreements . . . already contained the forum selection clause and choice of law provisions" and that Fortafy used those terms as the "default" for the operative publishing agreement. (*Id.*) Color Switch alleges that Fortafy's lawyer "screamed at Color Switch, [and] stated that the contract terms would never change, and threatened that if Color Switch sought to change the forum selection clause or otherwise refused

/////
/////
/////
/////
/////
/////

to sign the agreement as-is, it would lose all users, the game would be taken off the app stores, and Color Switch would lose all music, and everything else."[3] (*Id.* at 21.)

None of these allegations establish that the inclusion of the forum selection clause in the operative agreement was the product of fraud, coercion, or overreaching. First, Color Switch has not directed the court to any authority indicating that the conduct it alleges on the part of Fortafy constitutes fraud, coercion, or overreaching. Second, with respect to Color Switch's concerns regarding its bargaining power during the negotiations of the original and amended agreements, those concerns are of no import, since the issue is whether the inclusion of the forum selection clause in the publishing agreement was the product of fraud, coercion, or overreaching. As Color Switch admits, it was represented by counsel during the negotiation of the operative agreement. (*Id.* at 20.); *see also Burger King Corp v. Rudzewicz*, 471 U.S. 462, 486–87 (1985) (recognizing there was no "overweening bargaining power" where the party claiming fraud was represented by counsel throughout the transactions at issue). Third, "a forum clause is not unreasonable merely because of the parties' unequal bargaining power: it is enforceable if there is reasonable communication of the clause." *Marcotte v. Micros Sys., Inc.*, No. C 14-01372 LB, 2014 WL 4477349, at *7 (N.D. Cal. Sept. 11, 2014) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S 585, 595 (1991)). Here, Color Switch does not allege that the forum selection clause was not reasonably communicated to it.[4] Finally, "[f]or a party to escape a forum selection clause on the grounds of fraud, it must show that '*the inclusion of that clause in the contract* was the product of fraud or coercion.'" *Richards*, 135 F.3d at 1297 (quoting *Scherk*, 417 U.S. at 519 n. 14). Here,

---

[3] Color Switch was allowed to file a sur-reply following the July 17, 2018 hearing. (*See* Doc. No. 22.) Counsel for Color Switch represented that it "ha[s] additional eye witnesses" and "additionally documentary evidence . . . that [it] can present" to establish that there was fraud or coercion by Fortafy in the procurement of the publishing agreement. (Doc. No. 20 at 16.) However, Color Switch failed to allege any additional facts in its sur-reply, nor did it attach any documentary evidence to that submission demonstrating that the inclusion of the forum selection clause in the publishing agreement was the product of fraud or coercion.

[4] In fact, it is clear that the clause was reasonably communicated to Color Switch because Reichelt's signature appears directly under the clause, and the clause itself appears under a capitalized and bolded heading titled "**APPLICABLE LAW – JURISDICTION.**" (Doc. No. 9-5 at 9.)

13

Color Switch's general and conclusory allegations that Fortafy "employed economic pressure," took advantage of "the unequal bargaining position of the parties," and exerted "undue influence," (Doc. No. 11 at 19–22), fall short of meeting this standard.

Accordingly, the court concludes that the inclusion of the forum selection clause in the publishing agreement was not the product of fraud, coercion, or overreaching.

    2.    <u>Enforcement of the Forum Selection Clause Will Not Deprive Color Switch of its Day in Court.</u>

Next, Color Switch contends that enforcement of the forum selection clause will deprive it of its day in court. Specifically, Color Switch argues that it will be unable to seek relief under the Copyright Act and the Declaratory Judgement Act. (Doc. Nos. 11 at 23; 22 at 12.) Color Switch also contends UAE law provides for only minimal damages in copyright actions and that it will not be able to seek declaratory or injunctive relief before the Court of Dubai. (Doc. No. 22 at 12.) These assertions do not establish that Color Switch will be deprived of its day in court if this court enforces the parties' forum selection clause.

First, the court questions whether Color Switch is "entitled" to relief before a United States district court given that the forum selection clause specifically designates that "[*a*]*ny* dispute arising in connection with th[e] Agreement shall be submitted to the exclusive jurisdiction of the Court of Dubai." (Doc. No. 9-5 at 9) (emphasis added). Color Switch objects that it "never waived its right to enforce its intellectual property rights under the Copyright Act." (Doc. No. 22 at 4.) However, Color Switch did waive its right to present a claim arising in connection with the publishing agreement it entered to a United States district court. As discussed above, Color Switch's claims in this action arise in connection with the parties' publishing agreement.

Second, the fact that UAE law might provide less robust protections for copyright holders than the law of the United States does not establish that Color Switch will be deprived of its day in court. As the Ninth Circuit has observed: "difference in treatment does not mandate reversal. [A party] need not be guaranteed identical recourse in the foreign forum for enforcement of the forum-selection clause to be reasonable, nor is [the court required] . . . to predict the outcome of any proceeding in a foreign court." *Adema Techs., Inc.*, 657 F. App'x at 663 (internal citations

and quotation marks omitted)[5]; *see also Creative Tech.*, 61 F.3d at 701 ("The *forum non conveniens* doctrine does not guarantee the plaintiff its choice of law, or even that United States law will be applied in the alternative forum.")

Third, Color Switch's argument that it will be deprived of its day in court is belied by the declaration of attorney Omar Obeidat, which Color Switch submitted with its sur-reply. (*See* Doc. No. 22-1.) Attorney Obeidat, a partner practicing intellectual property law at a large law firm in the Middle East, states that copyright actions under UAE law are limited to straightforward applications of anti-piracy laws. (*Id.* at 1–2.) But, even if "the scope of relief available in the [the foreign forum] may not be what [a party] envisioned when it filed its claim in the United States district court, the *forum non conveniens* doctrine does not require it to be so." *Creative Tech*, 61 F.3d at 702. "The key determination is whether the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 701 (internal quotation marks and citation omitted).

Here, Color Switch has not shown that UAE law would be "so deficient that [it] would be deprived of any reasonable recourse and therefore has not shown that enforcing the forum-selection clause would effectively deny its day in court." *Adema Techs., Inc.*, 657 F. App'x at 663 (internal citation and quotation marks omitted); *see also Creative Tech.*, 61 F.3d at 701–02 ("A court may dismiss on forum non conveniens grounds even though the forum does not provide the same range of remedies as are available in the home forum. However, the alternative forum must provide some potential avenue for redress.") (citation omitted). Attorney Obeidat's declaration establishes that UAE law recognizes copyright actions. Moreover, the court has already concluded that Color Switch's copyright claims cannot be resolved without reference to the publishing agreement, and there is nothing before this court indicating that courts in Dubai applying UAE law are incapable of resolving contractual disputes between parties. In fact, as evidenced by court documents relating to the litigation between the parties currently pending

---

[5] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

15

before the Court of Dubai[6], it appears that court is more than capable of resolving the parties' disputes. For example, the Court of Dubai has "appointe[ed] a tripartite committee of experts specializ[ing] in intellectual property and literary rights" to identify (1) "[t]he contractual relationship between the parties and the extent of compliance by each of them . . . and breaches by any of them" and (2) "[t]he intellectual property rights owned by the Plaintiff in the game (Color Switch) and its developments and updates and the value of the game." (Doc. No. 32-1 at 2–3.)

Finally, Color Switch has not established that the Court of Dubai is unable to apply U.S. copyright law, if it were found to apply. Attorney Obeidat states "with absolute certainty" that the Court of Dubai will apply UAE law in this dispute because UAE courts "always apply UAE law" unless there is an agreement containing a choice of law provision, and applying that law would not contravene the UAE's public order or morals, and the litigant seeking to implement a different jurisdiction's law has "proved" the law through obtaining a certified, translated, and duly legalized text of the law. (Doc. No. 22-1 at 2–3.) Although the court, on a Rule 12(b)(3) motion to dismiss, must resolve all factual conflicts in favor of the non-moving party, *Murphy*, 362 F.3d 1138, the court is not convinced that there is a factual dispute here. Even if the court accepts that UAE courts generally apply UAE law, Color Switch has not "point[ed] to [a] barrier precluding the [Court of Dubai] from applying United States copyright law." *Creative Tech.*, 61 F.3d at 703. In fact, attorney Obeidat's declaration outlines a process by which Color Switch could seek to assert a U.S. copyright claim in the Court of Dubai.

---

[6] Fortafy asks the court to take judicial notice of court documents relating to the litigation between the parties currently pending before the Court of Dubai as well as Color Switch's application for a trademark registration in the United Arab Emirates. (Doc. No. 32.) Pursuant to Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Moreover, "a court may take judicial notice of public records of governmental entities and authoritative sources of foreign law." *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201, at *2 n.1 (N.D. Cal. Nov. 15, 2013). Here, because the documents Fortafy asks this court to take judicial notice of "are all either foreign court documents" or public records from a foreign government, the court grants the request. *Id.* The court takes judicial notice of these documents for the fact of their filing, but not for the truth of the matters asserted therein.

Accordingly, the court concludes that enforcement of the forum selection clause at issue in this action will not deprive Color Switch of its day in court.

   3. <u>Enforcement of the Forum Selection Clause Will Not Contravene a Strong Public Policy of the United States.</u>

Next, Color Switch argues that enforcement of the forum selection clause will contravene the strong public policy interest of the Unites States in enforcing its copyright laws. (Doc. No. 11 at 23.) However, as the Ninth Circuit has recognized, "[f]ederal copyright laws do not serve the consumers. They are designed to protect the property rights of copyright owners. As such, the key interests in this dispute lie with the [parties], not the American public." *Creative Tech.*, 61 F.3d at 704 (internal citations and quotation marks omitted). Here, the parties expressly contracted to resolve any disputes arising out of the publishing agreement before the Court of Dubai. Color Switch cannot now seek to avoid the consequences of its actions by claiming that its interests will not be protected abroad. "Whatever 'inconvenience' [Color Switch] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting." *Brennan*, 407 U.S. at 17–18. Accordingly, the court concludes that enforcement of the forum selection clause at issue will not contravene a strong public policy of the United States.

Having found that none of the three reasons articulated by the Supreme Court in *Bremen* that could make a forum selection clause unenforceable apply here, the court concludes that the parties' publishing agreement's forum selection clause is valid.

   4. <u>The Public Interest Factors Weigh in Favor of Enforcing the Forum Selection Clause.</u>

Because the court concludes that the forum selection clause in the publishing agreement is valid, the court must weigh only the public interest factors. *Atl. Marine*, 571 U.S. at 64. In doing so, the court must consider: "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Adema Techs. Inc.*, 2014 WL
/////

3615799, at *2 (quoting *Atl. Marine*, 571 U.S. at 62 n.6). However, consideration of public interest factors alone will "rarely defeat" a forum selection clause. *Atl. Marine*, 571 U.S. at 63.

Here, the court finds that there are no administrative difficulties in the Court of Dubai flowing from court congestion, since the parties' litigation in that forum has developed significantly since Fortafy filed a lawsuit in Dubai in June of 2018. (*See* Doc. Nos. 32, 32-1–32-9.) Moreover, the court notes that the Eastern District of California labors under one of the heaviest caseloads in the federal courts of this country. Thus, this factor weighs in favor of enforcing the parties' forum selection clause.

Color Switch contends that the United States has a strong policy interest in having this dispute resolved here because Color Switch is an American company holding a valid U.S. copyright and seeks to enforce its rights under the Copyright Act and Declaratory Judgment Act. (Doc. No. 11 at 27–28.) However, Fortafy is incorporated in the United Arab Emirates and its founders are based there. (Doc. No. 13 at 17.) Moreover, any interest the United States might have in this litigation is mitigated by the fact that Color Switch contracted to litigate any disputes arising in connection with the publishing agreement in the Court of Dubai under UAE law. Finally, "[f]ederal copyright laws . . . are designed to protect the property rights of copyright owners." *Creative Tech.*, 61 F.3d at 704. Here, even if enforcement of the clause might prevent Color Switch from asserting its rights under the Copyright Act, that outcome is one that should have been apparent to Color Switch at the time it entered the agreement.

Accordingly, the court concludes that the balance of the public interest factors weighs in favor of enforcing the publishing agreement's forum selection clause.

**C.      Leave to Amend Would be Futile and an Evidentiary Hearing is Not Necessary.**

The court is to "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[L]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (quoting *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)). The Ninth Circuit has "repeatedly stressed that the court must remain guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the

pleadings or technicalities." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003) (internal quotations and changes omitted). In evaluating whether leave to amend should be given, the following factors should be considered: "bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). "Futility alone can justify the denial of a motion for leave to amend." *Nunes*, 375 F.3d at 808; *see also Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend.")

Here, the court concludes it would be futile to grant Color Switch leave to amend. At the July 17, 2018 hearing, counsel for Color Switch represented that it could present "additional eye witnesses" and "additional documentary evidence" to support its argument that inclusion of the forum selection clause in the parties' publishing agreement was the product of fraud or coercion. (Doc. No. 20 at 16.) Moreover, counsel for Color Switch asked for the "opportunity to [re]search" why the Ninth Circuit's holding in *Creative Tech.* did not apply to this case. (*Id.* at 12.) In light of these representations and requests, the court permitted Color Switch to file a sur-reply. However, as noted above, that sur-reply did not allege new or additional facts or identify any evidence of fraud or coercion, nor did it address the Ninth Circuit's decision in *Creative Tech.* (*See* Doc. No. 22.) It is therefore clear to this court that Color Switch cannot in good faith allege any additional facts or provide additional evidence to cure the deficiencies noted above. *See Broudo v. Dura Pharm., Inc.*, 339 F.3d 933, 941 (9th Cir. 2003) (leave to amend should be granted where plaintiff offers to provide additional evidence "and such offer is made in good faith"), *rev'd on other grounds*, 544 U.S. 336 (2005).

For similar reasons, the court denies Color Switch's request for an evidentiary hearing and to take limited discovery on the circumstances surrounding the inclusion of the forum selection clause in the publishing agreement. (Doc. No. 11 at 29–30.) Although "it may be appropriate for the district court to hold a Rule 12(b)(3) motion in abeyance until the district court holds an evidentiary hearing on the disputed facts," the undersigned finds that there are no genuine factual disputes to resolve here. *Murphy*, 362 F.3d at 1139. The court gave Color Switch an opportunity

to allege additional facts in its sur-reply, or to attach evidence thereto, that would demonstrate the inclusion of the forum selection in the publishing agreement was the product of fraud or coercion. Color Switch's sur-reply, however, reiterated the same arguments that the court has found to be insufficient to establish fraud or coercion. Color Switch has simply failed to come forward with anything suggesting that there are disputed factual issues to be resolved in determining whether the parties' s publishing agreement's forum selection clause should be enforced. The court therefore finds that an evidentiary hearing is not warranted here.

## CONCLUSION

For the reasons set forth above:

1. Defendants' motion to dismiss (Doc. No. 9) is granted without leave to amend; and
2. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __March 29, 2019__  
                                            UNITED STATES DISTRICT JUDGE